## ASSESSMENT OF DAMAGES ON ACCOUNT OF CHANGE OF GRADE.

Circuit Court of Lucas County.

THE CITY OF TOLEDO v. ELIZABETH K. MEINERT.

Decided, February 29, 1908.

*Municipal Corporations—Change of Grade of Street—Action by Abutting Owner for Recovery of Damages—Objection to Failure to Allege Filing of a Claim for Damages and the Delaying of Suit for —Required Time Thereafter—Evidence—Competency of Ordinance Repealing Previous Ordinance Establishing Grade—Charge of Court —Uncontradicted Facts Distinguished from Admitted Facts— Proper Test as Amount of Damage which May Be Recovered—Items Entering Into the Calculation—Sections 1536-214 and 1536-279.*

1. In an action against a municipality for damages on account of a change of grade, compliance with the statutory requirement as to the filing of a claim for damages more than two weeks before the commencement of the suit is sufficiently shown, in the absence of direct evidence offered in chief, by testimony drawn out by the city, although introduced by the city for an entirely different purpose.

2. In such a case evidence as to the value of the property before and after the change of grade was made, while not admissible on the theory that is affords a proper measure or damages, yet because of the necessity of permitting such an inquiry to take a wide range, such evidence is not necessarily prejudicial where properly taken care of in the charge to the jury.

3. An ordinance, repealing a former ordinance establishing the grade of a street, is competent in an action for damages to abutting property on account of the change of grade, but such an ordinance is not conclusive as to the liability of the city on account of such change of grade.

4. Where the plaintiff testified that the improvements were made to conform to the grade originally established, and on cross-examination testified that she received this information from her father, it is prejudicial error not to withdraw the testimony so given from the jury.

5. Failure on the part of the municipality to contradict allegations as to construction of the buildings to conform with the grade previously established and a subsequent change of the grade by the municipal-

ity in such a manner as to impair the value of the improvements so made, does not amount to an admission of these facts by the municipality; and a charge to the jury which states that these facts were uncontroverted and had been established, and that the sole question to be submitted to the jury was the amount of damage, if any, suffered by the plaintiff, is prejudicial error.

6. In fixing the amount of damages to be awarded to an abutting owner on account of a change of grade, the test to be applied is the effect of the change upon the value of the improvements and not of the property, but this does not mean that the damages awarded must be limited to the expense of adjusting the improvements to the new grade.

7. There can be no allowance made for damages to the lot in its natural state, unless an unreasonable grade has been established; but where improvements have been made in reliance upon a previously established grade, or if none has been established with reference to a grade which might be reasonably anticipated, allowance may be made for filling the lot up to the new level around the house, and also for the cost of such changes in the building as a prudent man would make in restoring it to as good condition with reference to the new grade as it was with respect to the old, adding thereto any diminution in the value of the building after restoration, or subtracting therefrom any increase in value after restoration, general benefits not considered, but special benefits may be deducted where in excess of the amount which the property owner will be compelled to pay for by way of assessments.

*Charles S. Northup,* City Solicitor, and *John P. Manton,* Assistant City Solicitor, for plaintiff in error.

*Marshall & Frazer,* contra.

PARKER, J.; WILDMAN, J., and KINKADE, J., concur.

Suit was brought in the court of common pleas by Elizabeth K. Meinert against the city of Toledo. The petition alleges that the plaintiff was the owner of certain lots on Woodruff avenue in the city; that on February 1st, 1859, the city duly established the grade of said East Woodruff avenue at all points between Canton street and Cherry street; and that plaintiff's lots were between these points; that thereafter plaintiff erected certain buildings and other improvements upon said lots in accordance with the grade of said street so as aforesaid established, and this remained the grade of said street during the time of the making of said im-

provements and until the 13th day of June, 1904, when the city changed and re-established the grade of said East Woodruff avenue between Cherry street and Canton street, along and in front of plaintiff's lots, much higher than the grade before established and in accordance with which said plaintiff had constructed her said improvements; that in pursuance of this new grade, the street was filled up with dirt in such manner as to leave a bank of dirt and mud in front of her lots, about eight feet above the surface of the lots, and about eight feet above the grade of the street as established in 1859. She says that this resulted in great damage to her property, and sets forth specifically that it injured the ingress to said lots and said property and the egress from said lots to said street so that the same have been rendered difficult and dangerous to plaintiff and others using said property, and that the value of said lots has been greatly diminished in many other ways, through imperfect drainage and the situation of said lots, buildings and improvements far below the surface of said street. Then follows this averment to which I will give some attention:

"That said city of Toledo did, more than sixty days prior to the commencement of this action, at request of plaintiff, and after having due notice of the claims and demands of this plaintiff make a thorough investigation of the damages to the property of plaintiff, but has utterly failed to settle or adjust the same although plaintiff has been ready and willing at all times to receive compensation for her said damages,"

and she puts her damages at two thousand dollars.

The city answering admits certain allegations as to the location of her lots, as to her ownership thereof, as to the established grade in 1859 on East Woodruff avenue between Canton street and Cherry street, and "denies each and every allegation and part of allegation" in plaintiff's petition which is not expressly admitted to be true. The city further says:

"Answering further, defendant says that on the 25th day of May, 1865, the common council of the city of Toledo, by ordinance duly passed, repealed and revoked the grade theretofore established on the 1st day of February, 1859, for said East Woodruff avenue between Allen street (now Canton street)

and Cherry street, and that thereafter until the 13th day of June, 1904, there was no established grade for said East Woodruff avenue between said points.''

The defendant admits the re-establishment of the grade between these points on the 13th day of June, 1904, and sets forth how the grade was fixed, that is to say, the height above the datum line; it sets forth a resolution adopted by the council providing for the improvement of this street by filling it up to the grade; it says the plaintiff was duly served with a copy of said resolution, and that on or about the 28th day of September, 1904, and in and by said notice in writing, required plaintiff to file with the clerk of the council in writing her claims for whatsoever damages she might consider would be caused to her said lot by said improvement; and defendant further says that said plaintiff did not file with the clerk of council nor with this defendant within the time required by law for filing such claim, any claim for damages or injury to her said lot which might be caused by the making of said improvement, and said defendant proceeded to make said improvement in the manner hereinafter set out, relying upon plaintiff's waiver of damages for injury that might be caused to her said lots from said improvements. Then there are averments as to further proceedings taken by the council to make the improvement.

The trial resulted in a verdict and judgment in favor of the plaintiff for five hundred dollars and interest. A motion for a new trial was overruled; and error is prosecuted in this court and a number of things are complained of that we feel required to mention.

It is said by counsel for the city that when the trial was entered upon an objection was made to the admission of any evidence on the ground that the petition does not state a cause of action, the specific reason being that the petition does not state, as claimed by the city solicitor, that plaintiff filed her claim for damages and that she had delayed her suit for sixty days after filing such claim as required by Section 1536-279, R. S.

We entertain some doubts as to whether this question was presented in time. It is a question, as we understand it, which

must be presented at once, before any testimony is received. No material testimony had been adduced before this motion was interposed; but the trial was begun and was proceeding; the record shows fully a page of examination of a witness before the motion was interposed. But waiving this question, we conclude that the paragraph which I have read, beginning with the words "the said city of Toledo more than sixty days prior to the commencement of this action," etc., is intended to and does meet this requirement of the statute sufficiently to make the petition good as against this motion. Perhaps, if a motion had been interposed in due time to require the plaintiff to make her petition definite and certain, something different in the way of averment would have been required. It may be that a more critical view should be required if a demurrer had been interposed before the parties had entered upon the trial. But as against this motion, no mere lack of proper regard for the art of pleading can be regarded—I mean the fact that it is not artistically stated in view of the rules of pleadings. The purpose of this averment seems to us to be apparent; we do not see how it could have been intended otherwise than as an averment to meet the requirements of this section.

There is another section of the statute (1536-214, R. S.), on the subject of filing claims for damages, that seems to have a different purpose in view, that is, to provide that unless the claim for damages is filed within two weeks after a certain notice, it shall be deemed waived; it amounts to a bar if it is not complied with; it is a notice under a kind of statute of limitations. Section 1536-279, R. S., is intended to give a municipality an opportunity to investigate, and if it pleases to settle the claim before it shall be subjected to suit and costs of suit, and therefore it is provided that no person shall commence a suit against the corporation upon his claim until he files it with the clerk of the corporation and sixty days elapse thereafter, to enable the corporation to adjust the claim.

It is apparent that a compliance with Section 1536-279, might not or would not necessarily fulfill the requirements of Section 1536-214. In other words, Section 1536-279 might be complied

with at the time of the filing of the claim for damages, and yet a claim might be filed and still prevent the bar provided for in Section 1536-214. But if the claim is filed in compliance with Section 1536-214, R. S., that is to say, so as to meet its requirements, we can not see why that does not fully comply with the requirements of 1536-279, R. S., in so far as the filing of the claim is required. Then, of course, remains the other consideration whether the plaintiff has waited sixty days before bringing suit upon the claim.

It is contended here on behalf of the city that this matter required by Section 1536-279 is not only averred in the petition. but that it is unnecessary for the plaintiff to prove it, as well as to aver it; and that she has failed to prove it.

At the close of the plaintiff's case, a motion was made to withdraw the case from the consideration of the jury. At the time the plaintiff closed her case in chief, she had not introduced any evidence in support of the allegation that she had filed this claim for damages, or in support of her other allegation, which may be adduced from this allegation I have mentioned, that she had delayed suit upon her claim for sixty days after she had filed it; but immediately upon entering upon its case, the city put the plaintiff upon the witness stand and she was inquired of whether she had filed a claim for her damages with the city, and it obtained from her the admission that she had filed such a claim. It seems that the city had tried to draw this out upon her cross-examination but was prevented from doing this by the court; perhaps upon the ground that it was a part of the defense of the city that the city was attempting to enter upon prematurely. It is evident that the city by pleading the bar under Section 1536-214, R. S., that is to say, that plaintiff had not filed her claim within two weeks after having been served with notice, was undertaking to use this evidence as to the time she had filed her claim for one purpose, that is in support of their plea in bar; but we think the evidence here served another purpose, it served the purpose of the plaintiff, for it showed the filing of the claim. The city did not sustain its plea in bar because it failed to show the service of the notice and a delay of two weeks after the

service of the notice; it only showed the fact that claims in writ-
ing were filed (and they were exhibited to plaintiff and identified
as Exhibits 2 and 3) ; that these claims were filed on October 12th,
1904, and that taken in connection with the file-mark upon the
petition discloses that suit was begun April 3d, 1906, a matter
of which, for the purposes of the trial, the court was bound to
take judicial notice and a fact that the jury had a right to con-
sider. Those two things taken together discloses the fact that the
claim was filed and that suit was not begun upon it until sixty
days after it was filed.

The city complains of error in the admission of evidence touch-
ing the value of the whole property before and after the change
of grade in 1904. We are of the opinion that evidence upon this
subject is not admissible on the theory that this is the measure
of damages; but a wide range must be permitted in the admis-
sion of evidence on this subject, especially upon cross-examina-
tion. The test of values, etc., may be made by many inquiries
aside from those embodying the facts constituting the exact test
in fixing the measure of damages. Perhaps the plaintiff, in
chief, should not go into this matter as she did; but she seems to
have been driven to this course by the objection of counsel on
behalf of the city; and in view of this, we can not find that error
or at least prejudicial error occurred in the admission of this
evidence. The whole matter should be taken care of and we
think was taken care of by the charge of the court when he came
to give the jury the rules to guide them in ascertaining and
fixing the damages.

It has been seen that the city denied that the ordinance fixing
the grade of East Woodruff avenue at this point adopted in
1859 remained in force until 1904; and besides, the city alleges
affirmatively that this grade ordinance, in so far as it affected
this part of the street, was repealed in 1866. The city, in sup-
port of this allegation undertook to introduce in evidence an
ordinance passed by the council May 25th, 1866, and on objec-
tion of the plaintiff this ordinance was excluded.

It is urged by counsel for the defendant that in so far as it
purports to abolish this grade at this point the council blundered;

that it was a mistake; that it was never so intended; but we do not see how we or the trial court can assume any such thing. The ordinance fixes the grade of East Woodruff avenue between Allen street and Adams, fixing the height of the grade above the datum line at all the street intersections at Union, Wakeman, Putnam, Territorial road and Adams street, and provides that the grade of the street between the above mentioned points shall be an inclined plane. Nothing is said in this part of the ordinance about the grade of East Woodruff between Allen or what is now known as Canton street and Cherry street; but Section 5 of the ordinance repeals certain ordinances theretofore passed to establish the grade of certain streets, including the ordinance of 1859 establishing the grade of streets and alleys in Woodruff's Addition to Toledo, and by its plain language it seems to disestablish or repeal the ordinance establishing the grade of East Woodruff avenue, between Cherry street and Franklin avenue, which would cover the part of East Woodruff avenue between Canton street and Cherry street.

Now we are not prepared to say that this ordinance is conclusive evidence in favor of the city that the grade established by the ordinance of 1859 was then and thereafter to be disregarded by the city. We are of the opinion that under the authority of *Nolte* v. *City of Cincinnati*, 3 C. C., 503, such action might be taken by the city notwithstanding the repeal of this grade ordinance, as would make it liable for an actual change of grade; but it is entirely clear to us that this repealing ordinance is competent evidence on behalf of the city, and should have been admitted, and that it was prejudicial error upon the part of the court to refuse to admit it. It is for the jury to consider in connection with the fact that the grades at the intersections of Woodruff avenue with Cherry street and Canton street were not altered by this ordinance, and that the grading between the different streets must be inclined planes; together with any work on this part of the street that might have been done or permitted by the city in the way of bringing the level of the street up to the level of the grade fixed by the ordinance of 1859, the setting of stakes for improvements, the fixing of curbs,

or anything else that may have been done or shown to have been done by the city in addition to or in connection with the ordinance of 1866.

The plaintiff in the course of her testimony in answer to a question stated that the improvements upon these lots (which consisted of two dwelling-houses) were made to conform to the grade established by the ordinance of 1859, and upon cross-examination she said that she had this information from her father. A motion was made to withdraw her answer from the jury, which motion was overruled. It seems to us that her testimony upon this point was mere hearsay, and that the motion should have been sustained. If she meant to testify to the fact that the building conformed to the actual grade of the street, rather than to the grade established by ordinance, that they were made to conform to the level of the grade actually built upon the ground, this would be competent, provided she knew the fact and did not have it as mere matter of information from others. We think that in this the court committed error prejudicial to the city.

At the close of the evidence and the arguments, counsel on behalf of the city asked the court to charge four several propositions, which appear in the record and which are as follows:

1. Before the jury can find for the plaintiff in this case, it must appear by a preponderance of the evidence that the buildings on the land described in the petition of plaintiff were erected or constructed to a grade previously fixed and established for such street by the city of Toledo, and that the City of Toledo, after such buildings had been erected, changed the grade of the street so as to impair or render less convenient the means of ingress to or egress from, such buildings.

2. Plaintiff is entitled to recover only for the injury to the means of ingress and egress from the improvements on the said lots, and if the jury find that plaintiff is entitled to recover damages from the defendant, under the instruction which I have just given, they will then consider the matter of damages. Plaintiff is entitled to recover only such sum of money as dam-

ages as she will be required to expend to adjust the said improvements on her lots to the changed grade of the street.

3. Before plaintiff can recover in this action she must establish by a preponderance of the evidence the following facts, to-wit: That the buildings on her said lots were erected or placed thereon to the grade of said street which the city of Toledo had previously established; that the said city of Toledo changed such grade after the said buildings had been erected or placed on said lots, and that such change of grade of said street impaired or rendered less convenient the means of ingress to or egress from said buildings from said street. Plaintiff is required to show by competent evidence the cost of adjusting the improvements or buildings upon said lots to the changed grade, and plaintiff can recover in this action only such sum as would be required to make such means of ingress and egress to and from said buildings as convenient as it was prior to the change of the grade of the street.

4. If the jury should find from the evidence that plaintiff's said property was worth as much immediately after the street was graded up to the grade established in 1904, as it was immediately before the grade of the street was changed, and that the change of the grade of the street caused no depreciation in the value of plaintiff's property, then I say to you that your verdict should be for the defendant.

We think it entirely clear that the court was not required to charge requests numbered 2, 3 or 4; not required to charge No. 2 because the plaintiff might be entitled to recover more than the mere expense of readjusting her improvements to the new grade; not required to give No. 3 for the same reason; not required to give No. 4, because the test there to be submitted was as to the effect upon the plaintiff's *property,* whereas the court was confined to the matter or test of the effect upon the value of the improvements *only,* not to the whole property; and some of these requests seem to authorize the setting off of general benefits, which we think was not allowable.

The substance of the first request should have been given. It is calling the attention of the jury to the fact that there were certain issues of fact to be considered and resolved, both as to whether or not the buildings were erected or constructed to a grade previously fixed and established upon the street by the city of Toledo, and as to whether the grade was afterwards changed by the city of Toledo so as to impair the value of the improvements thus made.

We are not prepared to say that the court would be required to give this in the exact language submitted; but we call attention to it to emphasize another question made as to the charge given by the court, to show that counsel for the city had not waived any right arising under these issues of fact; that the city was not conceding that it had been established that the improvement had been made to conform to the grade established in 1859. Of this part of the charge the counsel for the city complains. I read it:

"It is admitted by the parties in the pleadings which they have filed in this case, and established by the uncontroverted testimony, that the city of Toledo is a municipal corporation; that East Woodruff avenue is a public street in said city; that the plaintiff, Elizabeth K. Meinert, is the owner of the east 25 feet of lot 134 and lot .135 of Woodruff's Addition to the city of Toledo, and that said lots have a frontage of 75 feet on East Woodruff avenue between Canton street and Cherry street in this city. That on the first day of February, 1859, the city of Toledo, by ordinance duly passed, established the grade of said East Woodruff avenue."

Now this far, we do not know that any complaint can be made of what the court said as to what had been established; for while these things may not have been established by uncontroverted evidence, we think the truth is they are established by the averments and admissions of the pleadings. Then the court continues:

"That after the establishment of the grade of the street in 1859, and in accordance therewith, the plaintiff constructed certain buildings and made other improvements upon the said lots. That on the 13th day of June, 1904, the city of Toledo changed and re-established the grade of the said street between

Cherry and Canton streets and in front of the said lots at points higher than the grade before established; that thereafter the street was graded to the grade established on the 13th day of June, 1904.''

And then the court continues:

''The plaintiff claims in her petition that by reason of the change in the grade of the street, she has suffered the damages of which she complains.

''The sole question of fact which you are asked to determine is what, if any, damages the plaintiff has suffered by reason of the change of the grade of the street in accordance with the grade established in 1904.''

Now if the ordinance of 1866 had been admitted there would have been more room for controversy as to the evidence upon which the plaintiff relied, and as to the truth of certain of these alleged matters which the court says have been established by uncontroverted evidence. We think that that ordinance should have been admitted; but even without that ordinance in evidence, the issue was made by the pleadings, as to whether these buildings had been constructed to conform to an established grade, even if as the case stood it might be fairly said that the grade of 1859 was established, it was not for the court to say, and the court was not authorized to say that it had also been established that the buildings had been constructed to conform to this grade. It matters not that the evidence, consisting of the testimony of certain witnesses, tended to esablish that fact; it matters not that the evidence may have been of a character so persuasive as to convince the ordinary mind that the testimony was true that the buildings were constructed to conform to that grade; the issue had been made by the pleadings, no evidence upon the subject that was conclusive in law had been submitted, the issue had not been waived by the city, the city was insisting upon the submission of this issue, as shown by the first request to charge. The issue should have been submitted to the jury. Some of us remember an expression of Judge Shauck in a case recently decided by the Supreme Court (we have not been able to lay our hands upon it), to the effect that uncontradicted facts are

not admitted facts; that because certain witnesses testify to facts and the witnesses are not contradicted, that does not amount to an admission of these facts by the adverse party. The jurors are not bound to believe the testimony of these witnesses; they may not believe them; they may be fully persuaded that the witnesses are either falsifying or that they are utterly mistaken; and so, notwithstanding the fact that there may be testimony tending to support a certain state of facts, not controverted by other witnesses or other evidence, the jury may disbelieve the testimony and may find the facts to be different from what the witnesses have testified to. The party insisting upon having the issues submitted to the jury has that right; and we think that in stating to the jury that these facts were uncontroverted or established and in following that statement with further statement that the sole question of fact to be submitted to them was the amount of damages, if any, the plaintiff suffered, prejudicial error was committed.

That I believe disposes of all the questions submitted, save that as to the measure of damages; and counsel for the city have asked us to say something upon that question. Of course we are not required to say more than that we find no error in the general charge upon this subject that would justify a reversal of the judgment. We think that in the main the charge upon the subject is correct; that it is correct as far as it goes, though we think that the court might have made the charge somewhat fuller and thereby made it somewhat clearer; but there was no request to charge further upon the subject. We call attention to a few of the authorities that have reference to the rule that the damages recoverable consist of the diminished value of the improvements—improvements that are made in reliance upon a grade that has been established, or if none had been established, a level the establishment whereof might reasonably expected as a reasonable grade. The law upon the subject is discussed in the case of *Cincinnati* v. *Williams,* 8 Ohio Nisi Prius, 561, in the charge and in a note appended thereto by Hon. F. M. Coppock, of the Cincinnati bar. We think that in the main the statements made by Judge Avery and by Mr. Coppock are cor-

rect statements of the law upon the subject. No damage to the lot in its natural state is allowable, unless an unreasonable grade shall be established; then the law seems to allow for damages to the property; but that we have not considered here—I mean damage to the naked lot. Ordinarily damages are not allowed because of the diminution in the value of naked unimproved property. It is only to be allowed on account of the improvements that the proprietor has made in reliance upon an established grade or one reasonably to be anticipated; therefore, where damages for improvements are allowed, care should be taken to not include damages to the lot considered independent of the improvements. Here the claim is that the grade was raised about eight feet and a half. The question for the jury was how did the raising of the grade by the city affect the value of the houses, assuming that it had been established, that there was a grade and that the houses were built in conformity thereto. What were the houses worth as they stood upon these lots immediately before the change of grade and what were they worth immediately thereafter; not what did the house cost, nor what they would be worth situated elsewhere, for sometimes improvements are inappropriate to the location; sometimes it turns out to be a waste of money to put a residence of a certain value in a certain place, or to put up a business house in a certain place, because the building is inappropriate to such place. This change of value the jury have a right to consider; the cost of making the houses convenient of access, if they have been rendered inconvenient of access by the improvement, to restore them as far as possible to their condition of convenience of access by such means as would be deemed reasonable and expedient by the jury. Of course such expenditures as would be deemed imprudent under the circumstances are not to be considered by the jury. The city is not bound to pay the cost of rendering the property as convenient of access as possible, or as it was before, if such cost would be wholly disproportionate to the advantage resulting therefrom. Sometimes with a dwelling-house upon a small lot, in order to make it fairly convenient of access it would be neccessary to fill up the lot to the grade of the street. Suppose the

case of a lot upon which there were an inexpensive house, a large lot requiring a great deal of filling, the house, we will say, worth five hundred dollars, and the expense of filling more than five hundred dollars, perhaps one thousand dollars, of course the jury would not be authorized to take into consideration the expense of filling up the lot to the level of the house; because the city would be entitled to discharge its obligation by paying the whole cost of the house which it has rendered wholly useless and worthless; and the same rule may be applied to any other alterations and changes made necessary by the change of grade. The city could not in any event be required to pay more than the value of the improvements destroyed or rendered worthless by the improvement. General benefits to the lot are not to be considered to set off against this depreciation. What are general benefits and what are special benefits, as they are often called, is often a different question.

That the property may have been made more valuable as a business property by the city improving the street, or that it could be made more valuable by being otherwise improved and used than as designed, and as used by the owner, is, we think, wholly immaterial. The owner has a right to improve and use his property as he may please. It may please him to use as a place of residence a lot that he could use much more profitably for a business house; but that is his right; and the question for the jury is as to the diminution, if any, of the value of the particular improvement upon the lot—such diminution as may have resulted from the change of grade.

As I have said, general benefits are not to be considered, such benefits as may have resulted to all property in the neighborhood; but special benefits, not to this lot as such, not to this lot considered with respect to its availability for other uses; but special benefits resulting to those improvements as they stand, or as prudence may require them to be changed. Such special benefit are to be considered. If, for instance, it is found to be prudent to raise the dwelling-houses up to the new level of the street, as against the expense of so changing the house, the expense of filling up to the houses may be considered, any special benefits

found to result from the houses being placed where they may have basements that they could not have before; any special benefits arising from increasing or improving the facilities for drainage, sanitary or otherwise—I mention these things simply as an illustration. In considering drainage, however, of course the jury should take into consideration such benefits as the lot may be required to pay for fully by assessments; but only such benefits as would result from these particular improvements in excess of what the proprietor may have been required to pay for.

As we have said we think the charge is substantially correct as far as it goes, and as no more specific charge upon this subject was desired or requested, we find nothing in the charge justifying a reversal, except as to the issue of fact.

In this note of Mr. Coppock's on page 573, he extracts and states certain rules of law which we think are well settled; state the law correctly and may be applicable to this case. I read them:

"1.   If after the changes which a prudent man would make to restore the premises to as good condition with respect to the new grade as they were with reference to the old, they are of the same value as before the change of grade, the reasonable costs of such restoration would be what the owner is entitled to recover.

"2.   If under like circumstances, they are less valuable when restored, than before the change of grade, the amount of this diminution in value should be added to the costs of restoration, as the amount of recovery.

"3.   If under like circumstances, they are more valuable when restored than they were before the change of grade, there should be a recovery for the difference between the costs of restoration and this increase of value if less than the costs of restoration, but no recovery, if more."

The judgment of the court below will be reversed, and the cause remanded, because of the error in excluding the ordinance and of error in declining to rule out the answer of the plaintiff before referred to, and the error in the statement in the charge as to uncontradicted facts.